Jesse W. **STUCKEY**, Appellant (Defendant),

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 49A02–8907–CR–371.

Court of Appeals of Indiana, Second District.

Sept. 27, 1990.

Transfer Denied Dec. 5, 1990.

---

**2.**

| | |
|---|---|
| Insurance | $ 8,622.77 |
| Real Estate Taxes | $14,595.56 |
| Personal Property Taxes | $ 546.25 |

| | |
|---|---|
| Sewer—Approximately | $ 2,027.32 |
| * Real Estate taxes | $ 8,306.00 |
| Interest | $33,522.21 |

\* Not yet due at time of trial

Bruce G. Jones, Lawrence M. Lunn, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

### CASE SUMMARY

Defendant-appellant Jesse Stuckey (Stuckey) appeals from his convictions for bribery,[1] claiming that the trial court erred when it failed to dismiss one of the bribery charges because it had been filed after the statute of limitations had expired, that the indictments contained material variances

1. Ind.Code 35–44–1–1 (1988).

from the proof introduced at trial, that the trial court erred when it allowed several of his pre-trial statements into evidence, and that the trial court erred when it allowed photocopies of certain documents to be admitted into evidence.

We affirm in part and reverse in part.

## FACTS

The facts most favorable to the jury's verdict reveal that from 1979 to 1987, Stuckey worked for the Indiana State Fair Board (Fair Board) as Superintendent of Building and Grounds (Superintendent). As Superintendent, Stuckey was in charge of the day-to-day maintenance and operation of the physical plant of the State Fair grounds, and he reported to the Fair Board on a monthly basis. He also supervised the employees of the buildings and grounds staff.

At the beginning of his tenure, one of Stuckey's duties was to choose the contractor who would perform heating and cooling work on various Fair buildings. Prior to 1985, the heating and cooling work was not done by competitive bidding and several different contractors performed work on various Fair buildings. Before 1985, Ellis Corp. (Ellis) had worked on heating and cooling facilities.

After January 1985, the Fair Board decided to take competitive bids for the heating and cooling work, but authorized Stuckey to hire contractors on an emergency basis for work costing between $5,000 and $15,000. A.B. Young Company (A.B.) was the recipient of the first competitively bid contract to provide heating and cooling service to the Fair grounds. The contract period was from June 1, 1985, to May 31, 1986. Throughout the contract, the Fair Board experienced problems with A.B.'s work. In the spring of 1986, the ice rink in the Colosseum needed to be repaired and Stuckey hired Ellis to do the repair work.

In April 1986, Ellis was awarded the heating and cooling contract after submitting the lowest bid. The Fair Board suspended Ellis' contract in 1987 when it discovered Ellis had made several payments to Stuckey. Stuckey admitted he had ac-

cepted several checks from Ellis that were included in Christmas cards. Stuckey accepted one check for $500 dated December 23, 1981; one check for $600 dated December 23, 1983; and one check for $800 dated December 21, 1984. Stuckey resigned as Superintendent in July 1987.

On August 31, 1988, Stuckey was charged with three counts of bribery. Count I of the indictment was for the 1984 payment, count II was for the 1983 payment, and count III was for the 1981 payment. A jury trial was held March 20 through 23, 1989, and Stuckey was found guilty on counts II and III and acquitted on count I. Stuckey was given five-year terms of imprisonment on counts II and III, those sentences were suspended with the exception of ten weekends of incarceration. Stuckey was placed on three years probation, ordered to serve three hundred hours of community service, and fined $2,000.

## ISSUES

Stuckey raises five issues for our consideration, which we restate as follows:

1. Whether the trial court erred when it failed to dismiss count III because it was not timely filed?

2. Whether there was a fatal variance between the charging indictments and the proof introduced at trial?

3. Whether the trial court erred when it allowed certain pre-trial statements made by Stuckey into evidence?

4. Whether the trial court erred when it allowed photocopies of certain documents to be admitted into evidence?

## DECISION

ISSUE ONE—Did the trial court err when it failed to dismiss count III?

PARTIES' CONTENTIONS—Stuckey claims that because the statute of limitations for bribery is five years, the indictment on count III, filed seven years after the payment was made, was not timely and therefore should have been dismissed. The State responds that bribery is a continuing

offense and therefore the limitations period did not begin to run until Stuckey left office in 1987.

CONCLUSION—The trial court erred when it failed to dismiss count III.

The State offers us somewhat of a mixed bag to support its claim that count III should not have been dismissed. The State, at trial, asserted a statutory exception to the limitations period tolled the application of the statute of limitations. On appeal, the State recognizes the exception might not apply and in the alternative argues that bribery is a continuing offense, and that the statute did not begin to run until Stuckey left office. We consider these arguments separately.

## I. STATUTORY EXCEPTION

Ind.Code 35–41–4–2 (1988) provides, in pertinent part:

"(a) Except as otherwise provided in this section, a prosecution for an offense is barred unless it is commenced:

(1) within five (5) years after the commission of a Class B, *Class C,* or Class D felony . . .

(d) The period within which a prosecution must be commenced does not include any period in which:

.    .    .    .    .

(3) the accused person is a person elected or appointed to office under statute or constitution, if the offense charged is theft or conversion of public funds or bribery *while in public office.*"

(Emphasis supplied).

At trial, the State asserted that the exception to the limitation period allowed the prosecution of count III because Stuckey was a "public officer" charged with bribery. Now the State abandons that position, and rightfully so.

Ind.Code 15–1–1–6 (1988) provides that the Fair Board "shall employ . . . a superintendent of grounds and buildings. . . ."

■ It is well-established that an office is a public charge, or employment, in which the duties are continuing and prescribed by law, and not by contract, and the officer holder is invested with some of the functions pertinent to sovereignty, or having some of the powers and duties which inhere within the legislative, judicial, or executive departments of the government. *State ex rel. Black v. Burch* (1948), 226 Ind. 445, 80 N.E.2d 294; *Pike Co. v. State ex rel. Hardin* (1984), Ind.App., 469 N.E.2d 1188; *Union Township v. Hays* (1965), 138 Ind.App. 280, 207 N.E.2d 223, *trans. denied; Mosby v. Bd. of Comm'rs* (1962), 134 Ind.App. 175, 186 N.E.2d 18.

■ This court in *Mosby* considered the issue of whether a park manager who had worked for a park board was an office holder or an employee. In concluding that the manager was an employee, not a public officer even though the position of park manager was authorized by statute, it was reasoned that no statutory duties or responsibilities were designated. Also, no oath or bond was required to be given by the park manager, and, while various statutes pertaining to the position referred to the park manager position as an office, the statutes also referred to the park manager as an employee. The crucial element appears to be that no official duties and responsibilities were designated.

Similarly, the Fair Board is charged with the administration of the Fair grounds on behalf of the State of Indiana, and IC 15–1–1–7 lists various Fair Board duties, including the complete control of the Fair grounds, buildings and other equipment and all property rights held thereto. The duties and responsibilities of the Superintendent are not defined by statute and the language of IC 15–1–1–6 indicates the Superintendent is merely an employee of the Fair Board.

Because he was not a public officer, the exception enumerated in IC 35–41–4–2(d)(3) does not apply to Stuckey and it did not toll the limitation period from beginning on count III.

## II. CONTINUING OFFENSE

As an alternative, the State argues that bribery is a continuing offense, and therefore, once a public servant has accepted a

bribe, the bribery continues until the servant leaves his position. In support of its argument, the State cites the 7th Circuit Court of Appeals decision in *U.S. v. Forszt* (7th Cir.1981), 655 F.2d 101.

In *Forszt*, the court had before it a defendant who had been convicted under the Racketeer Influenced and Corrupt Organizations Act (RICO) for several violations of the Indiana bribery statute. The defendant clasped the five-year federal statute of limitations to his bosom claiming time had run because the indictment was filed in March of 1980, and his term of office had ended in December 1974. The defendant had, however, received payments in March of 1975. In construing Indiana law, the court decided that, in Indiana, "bribery is a continuing offense so that *payments* made as part of an arrangement to influence a public official in the discharge of his duties *are violations of Indiana law* regardless of whether the money is paid before or after the bargained-for acts are performed." *Forszt* at 104 (emphasis supplied).

The State's reliance on *Forszt* is misplaced. The key distinguishing factor between the facts considered in *Forszt* and Stuckey's is the timing of the beginning of limitations period. In *Forszt*, the court concluded the bribery offense continued until *payment* was made, even though the acts which were influenced occurred before the payment. Here, the State argues that the bribery continued *after* the payment was made and did not end until Stuckey left his position. The *Forszt* court concluded the limitations period began when the *payment* was made. The State asks us *not* to begin the limitation period when the payment was made, but rather when Stuckey resigned.

■ As was recognized in *Forszt*, the gravamen of the offense of bribery is the soliciting or receiving of money by an official to influence him with respect to his official duties. *Williams v. State* (1919), 188 Ind. 283, 123 N.E. 209; *Glover v. State* (1887), 109 Ind. 391, 10 N.E. 282. It is the *receiving* or soliciting of the *payment* which is prohibited, not the use of corrupt-

ed or influenced discretion, and therefore, it is the *payment* which triggers the beginning of the limitations period.

■ Whether the public servant was actually controlled or influenced is irrelevant, so long as the payment was accepted or solicited with the *intent* to control the public servant. IC 35–44–1–1(a)(2).

■ As the gravamen of the offense of bribery is the *acceptance* of something of value, we must conclude that count III, which was filed seven years after the payment to Stuckey, was not timely filed, and that the trial court erred when it failed to dismiss count III.

ISSUE TWO—Was there a material variance between the charging indictments and the evidence introduced at trial?

PARTIES' CONTENTIONS—Stuckey argues that a material variance existed between the charging indictments and the evidence introduced at trial because the indictments charged him with receiving United States currency and the evidence introduced at trial established that he had received three checks. The State responds that the variance was immaterial and the fact that Stuckey negotiated the checks was sufficient to support his convictions.

CONCLUSION—Any variance was immaterial.

■ A variance in the proof is fatal to the State's case only if it misleads the defendant in the preparation of his defense or if it is of such a degree as to be likely to place the defendant in double jeopardy. *Manna v. State* (1982), Ind., 440 N.E.2d 473; *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248; *Smith v. State* (1960), 241 Ind. 1, 168 N.E.2d 199.

■ In *Smith*, our supreme court applied this standard to the defendant's claim that there was a fatal variance in the indictment charging him with bribery because the indictment specified the amount of the bribe and the proof did not demonstrate a fixed amount was paid. The supreme court concluded that the defendant had not demonstrated how his defense had been hindered or that he would be subject

to double jeopardy because of the variance. The court concluded the variance was immaterial. *Smith, supra.*

Stuckey has demonstrated no prejudice in the preparation of his defense, and he cannot reasonably claim he would be subject to double jeopardy.

Stuckey cites *Kirk v. State* (1968), 250 Ind. 307, 235 N.E.2d 684. In *Kirk,* the supreme court considered a defendant's claim that the proof introduced in his trial for larceny contained a material variance from the indictment charging him. The indictment charged him with stealing $2,000 in lawful United States currency, and the evidence adduced at the trial showed that he had received a check in the amount of $2,000. The court concluded that because the State had alleged *larceny of money,* it was bound to prove the allegation as made. The court also concluded that the evidence was insufficient to prove the defendant's intent, reversed the defendant's conviction and remanded for a new trial.

In our opinion the State accurately contends that larceny is a sufficiently different crime from bribery so as to render the variance immaterial. There are no Indiana decisions directly on point, but other jurisdictions have considered whether an information charging a defendant with bribery for accepting United States currency contains a material variance from proof which demonstrates the bribery was committed in the form of a check. *See Saunders v. State* (1931), 43 Ga.App. 59, 158 S.E. 433; *Fleming v. State* (1930), 122 Ohio St. 156, 171 N.E. 27.

The Ohio supreme court in *Fleming,* concluded "[t]here was no variance in that respect that would mislead the defendant or justify a verdict of acquittal. The defendant received money through the medium of a check. This is admitted, and it is also admitted that he cashed the check and actually received, in money, the sum that the check represented." *Fleming, supra* at 159, 171 N.E. at 29. *Saunders* is to the same effect.

Similarly, Stuckey has not been misled in the preparation of his defense of the brib-ery charge. He endorsed and negotiated each check. *Record* at 976–79. How could he have been misled? Therefore, we conclude that the variance was immaterial, that the checks were admissible, and that the evidence was sufficient to sustain Stuckey's conviction.

ISSUE THREE—Did the trial court err when it allowed some of Stuckey's pre-trial statements to be admitted into evidence?

PARTIES'      CONTENTIONS—Stuckey claims that because the statements were not totally incriminating, they were inadmissible. The State responds that the statements contained an admission of an element of the crime, and therefore were admissible.

CONCLUSION—The      statements      were properly admitted into evidence.

Stuckey objected to the testimony of various witnesses which related that Stuckey had admitted accepting Christmas gifts from Ellis which also contained denials that the gifts had ever influenced his decisions or that Ellis had ever asked to be given business in return. *Record* at 738, 1030, 1041.

■ Because Stuckey did not testify at trial, the testimony concerning his prior statements was hearsay. However, a defendant's admissions against interest are admissible under the exception to the hearsay rule for admissions of a party opponent. *Jones v. State* (1987), Ind., 510 N.E.2d 1352. A defendant who does not testify, however, cannot introduce exculpatory statements made outside of court in order to enhance his credibility at trial. *Canaan v. State* (1989), Ind., 541 N.E.2d 894; *Washburn v. State* (1986), Ind., 499 N.E.2d 264.

■ Stuckey says that because the admissions contained exculpatory statements, they were inadmissible, citing *Washburn, supra.* The court in *Washburn* concluded that the trial court had not erred when it refused to admit a defendant's statement which included exculpatory claims. While the supreme court has determined that self-serving hearsay is not admissible, the court recently decided that a defendant can

introduce self-serving hearsay statements if the State has introduced incriminating portions of the same statement. *McElroy v. State* (1990), Ind., 553 N.E.2d 835. If the portion of the statements that contained incriminating elements is admitted, the entire statement is admissible despite the fact that the statement also contains exculpatory claims.

Further, Stuckey has failed to demonstrate any prejudice arising from the admission of these statements which contained exculpatory claims.

ISSUE FOUR—Did the trial court err when it admitted photocopies of certain documents to be admitted into evidence?

PARTIES' CONTENTIONS—Stuckey claims that photocopies of certain invoices were improperly admitted into evidence because they were copies of copies, and not original documents, and that no showing of why the original document could not be produced was made. The State replies that the introduction of photocopies of documents is authorized by statute and that Stuckey has failed to demonstrate any harm which could have arisen from their admission.

CONCLUSION—The photocopies were properly admitted.

■■■ The trial court did not err when it allowed photocopies of certain documents to be admitted into evidence. Stuckey claims that photocopies of invoices from Ellis for work performed on the Fair grounds were not properly admitted. Stuckey claims the invoices were photocopies of carbon copies made at the time the invoices were produced and that the original document should have been introduced.

Stuckey fails to demonstrate any error. Ind.Code 34-3-15-1 and -2 (1988) provides that photographic copies of business records are admissible. *Wilson v. State* (1989), Ind.App., 536 N.E.2d 1037, *trans. denied.* And our supreme court has determined that a photocopy is equally as admissible as the original of a document. *Owensby v. State* (1984), Ind., 467 N.E.2d 702. He makes no claim that any prejudice arose from the admission of the photocopies as opposed to the original documents, and we discern none. No error here. *Wilson, supra.*

Stuckey's conviction on count II is affirmed, and his conviction on count III is reversed.

SHIELDS, P.J., and GARRARD, J., concur.