## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 06 2019, 10:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William T. Myers
Whitehurst & Myers Law
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Donald J. Stanley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 6, 2019

Court of Appeals Case No.
19A-CR-318

Appeal from the Huntington
Superior Court

The Honorable Kenton W.
Kiracofe, Judge

Trial Court Cause Nos.
35D01-1712-F6-289
35C01-0907-FC-40

**Baker, Judge.**

[1] Donald Stanley appeals his conviction for invasion of privacy as a Class A misdemeanor under cause number 35D01-1712-F6-289 (Cause F6-289) and his sanction for his probation violation under cause number 35C01-0907-FC-40 (Cause FC-40). He argues that (1) the trial court erred when it limited Stanley's cross-examination of a witness and excluded certain testimony in Cause F6-289; and (2) the trial court erred when it revoked Stanley's probation and ordered the remainder of his sentence served in the Department of Correction (DOC) in Cause FC-40. Finding no error, we affirm.

## Facts

[2] On September 28, 2009, Stanley pleaded guilty in Cause FC-40 to Class C felony burglary and was sentenced to eight years, with four and one-half years suspended to probation. Some time after Stanley was released to probation, he met and began dating Mandi Miller, who was separated at the time from her husband, Michael Miller. Stanley and Mandi moved in together in February 2017. At some point during their relationship, Stanley and Mandi purchased a 2016 Chevy Cruze together. The relationship ended around June 2017, at which point Mandi returned to live with Michael.

[3] On June 13, 2017, Mandi sought and was granted an ex parte order for protection that prohibited Stanley from having any direct or indirect contact with Mandi. The protective order was in effect at the time Stanley was served with the order on June 17, 2017, and was set to expire on June 13, 2019. The order also granted Mandi possession of the 2016 Chevy Cruze. Stanley filed his

own petition for a protective order, a hearing for which was set for June 21, 2017, in Huntington County.

[4] On June 21, 2017, Mandi drove the Chevy Cruze to the protective order hearing. Michael and his son Zachary accompanied Mandi to the hearing. The three left their cell phones and other personal belongings in the locked Chevy Cruze, knowing they would not be able to bring them into the courthouse. All three went through security at the courthouse and proceeded up to the second floor, where the hearing was to be held.

[5] Stanley then entered the courthouse and encountered Officer Rodney Jackson, the Huntington County Courthouse security coordinator, as he went through security. Officer Jackson asked Stanley if he had a phone and Stanley responded that he did, but that he did not have a car where he could leave his phone. Officer Jackson collected the phone for Stanley to retrieve when he left the courthouse and Stanley went up to the second floor.

[6] As Stanley entered the second floor, Mandi and Michael saw him immediately turn around and exit the courthouse, without retrieving his cell phone at security. Michael asked Zachary to go check the car, and Officer Jackson, who was concerned after seeing Stanley leave the building so quickly, began monitoring the security cameras in the direction Stanley was heading. Officer Jackson watched Stanley head to the Chevy Cruze, unlock it, and enter it; Zachary, who was outside at this point, saw Stanley do the same and returned to the courthouse to tell Mandi and Michael what he saw. Officer Jackson

continued to watch Stanley, who appeared to use a key fob or remote to lock the Chevy Cruze as he walked back to the courthouse.

[7] As Stanley re-entered the courthouse, Officer Jackson told him to take his phone to his car, to which Stanley replied "I don't have a car." Tr. Vol. II p. 107. Officer Jackson told Stanley that he had been seen on camera entering the Chevy Cruze. In response, Stanley then left the courthouse again. Michael, Mandi, and Zachary all went to check the Chevy Cruze, at which point they discovered that Mandi's and Michael's phones were missing from the car. The Millers went back to the courthouse to report the stolen phones.

[8] While each of the Millers provided witness statements to Huntington Police Officer Dale Osborn, Stanley re-entered the courthouse and began yelling and arguing with the Millers. Due to this behavior, Officer Jackson ordered Stanley to leave the courthouse and Officer Osborn asked to speak to Stanley at the police station. When Stanley exited, he left behind his keys at the courthouse security station, including the keys that opened the Chevy Cruze. During Officer Osborn's questioning, Stanley admitted entering the vehicle but denied taking the Millers' phones. Stanley also told Officer Osborn that when he was served with the protective order, the officer serving the order, Officer Coe, had told Stanley that it would not be in effect until July.

[9] On December 5, 2017, the State charged Stanley in Cause F6-289 with Level 6 felony theft, Class A misdemeanor invasion of privacy, and Class B misdemeanor unauthorized entry of a motor vehicle. On December 15, 2017,

the State filed a petition to revoke Stanley's probation in Cause FC-40, alleging that he violated his probation when he committed the new offenses. Prior to trial in Cause F6-289, the State dismissed the charge for unauthorized entry of a motor vehicle.

[10] A jury trial was held for Cause F6-289 on January 8-9, 2019. During Stanley's opening statement, counsel stated, "anticipate that you're gonna hear testimony that the day that [Stanley] was served, which is important—the day he was served with the Allen County paperwork, he was told by an officer . . . ." Tr. Vol. II p. 22-23. The State objected to this statement on hearsay grounds, which the trial court sustained. Stanley's counsel informed the court that he intended to cross-examine Officer Osborn, who was a witness for the State, as to Stanley's statements to him during questioning at the police station—namely, Stanley's statements regarding what Officer Coe had told Stanley about the effectiveness of the protective order filed against him. The State made an oral motion in limine at the close of opening statements, stating the following:

> THE STATE: . . . [M]y second motion in limine is that he . . . be precluded from testifying about or making any statements that are hearsay. . . . I specified in my motion in limine that it pertained to . . . the protective order application, which the Defense provided me a copy of. But if the Defendant intends to introduce statements that the Defendant made to police, that can't come in. That's hearsay. He—he's not a party opponent. He can't . . . do that. The proper way to do that is for his client to take the stand and testify as to what happened. But he doesn't want his client to take the stand, maybe, and so he's trying to do a backdoor approach to that. He also cannot have his client . . . even if he chooses to testify, to talk about statements an officer

made to him during the service of a protective order. He can't. That's hearsay. So he's gonna have to bring in [Officer Coe] and have the officer testify that he made those statements, which I—I haven't even talked to that officer. I have no reason to know if he did or didn't make those statements. But certainly statements made to the Defendant that the Defendant would testify about are hearsay, and any attempt that the Defendant wants to put in his version of events through statements made by the Defendant to the police are precluded because that is also hearsay.

*Id.* at 31.

[11] Before Officer Osborn took the stand, the trial court again addressed the issue of the statements Stanley sought to admit during cross-examination. Following Officer Osborn's testimony, the trial court allowed Stanley to make an offer of proof, outside the presence of the jury, for the admissibility of Officer Osborn's report on his questioning of Stanley and the statements Stanley made during that questioning. That hearing proceeded as follows:

> OFFICER OSBORN: [Stanley] had—had admitted that he went and made a phone—or made a—had a key made for the car, and I advised him again. I said, "You've got a restraining order. You've got no business in there, Donnie. It's rewarded to her." And he says, "I know that now. I shouldn't have been in the car." And he's been—and I saw it said on—told him on video. I said, "You're the only one that's been in the car. It's been on video. You're the only one that's ever been in and out of the car," I said, "and then the—the phones are gone. I need the phones back." I really was trying to get him just to turn back in his stuff. . . . . [D]id I ask him about being in the car? Yes, and he said he'd been in the car, in a couple of times and he shouldn't have been.

STANLEY: I believe at one part of the video and you documented in your report, you . . . showed him the protective order, correct?

OFFICER OSBORN: Yeah. . . .

***

STANLEY: And Mr. Stanley indicated to you that, uh, he was served that paperwork by an Officer Coe; is that correct?

OFFICER OSBORN: Yes. . . .

STANLEY: Okay. And that officer told him—uh, you documented in your report that he told him that he did not have to worry about that until the later court date; is that correct?

OFFICER OSBORN: I—I put in there that that's what Donnie was trying to tell me, yes.

***

STANLEY: Uh, there was also some question about . . . him turning a key inside of that, programming a key or something of that nature?

OFFICER OSBORN: He said, "In order to take it—my new key to work, to program it properly, I had to get in the car." This is Donnie talking. He said, "I had to get in the car and turn the car on and go—let it go through all its procedures so I could electronically get it to hook up to the computer of the car."

STANLEY: And again he then told you several times that he had no idea about the stolen cell phones; is that correct?

OFFICER OSBORN: He told me he didn't know. He said he was gonna take the car. I said, "Donnie, you can't take the car, either, because the Court has awarded it to her."

*Id.* at 162-64. Following this offer of proof, the trial court stood by its previous ruling limiting the cross-examination of Officer Osborn on hearsay grounds.

[12] While the jury deliberated, the trial court heard arguments regarding the petition to revoke Stanley's probation in Cause FC-40. The jurors found Stanley not guilty of theft but guilty on the invasion of privacy count. The trial court sentenced Stanley to ninety days for the invasion of privacy conviction, and revoked Stanley's probation in Cause FC-40 and ordered him to serve the remaining four and one-half years of his previously-suspended sentence in the DOC. Stanley now appeals.

# Discussion and Decision

## I. Hearsay Testimony

[13] Stanley's first argument on appeal is that the trial court improperly limited the scope of the cross-examination of Officer Osborn in Cause F6-289. Specifically, Stanley argues that he should have been allowed to introduce self-serving hearsay statements via Officer Osborn's testimony because the State had introduced incriminating statements from the same conversation with Officer Osborn.

[14]    The admission or exclusion of evidence is within the trial court's sound discretion and is afforded considerable deference on appeal. *E.g.*, *Bacher v. State*, 686 N.E.2d 791, 793 (Ind. 1997). We may reverse a trial court's ruling on the admissibility of evidence only when the ruling is clearly against the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law. *E.g.*, *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015).

[15]    Stanley relies primarily on the doctrine of completeness to support his argument that Officer Osborn's testimony on Stanley's statements to him should have been admitted. "[T]he general rule is that when a party introduces part of a conversation or document, the opposing party is entitled to have the entire conversation or the entire instrument placed into evidence." *McElroy v. State*, 553 N.E.2d 835, 839 (Ind. 1990).[1] This allows otherwise inadmissible self-serving hearsay to be introduced if the opposing party has introduced incriminating portions of the same conversation, *Stuckey v. State*, 560 N.E.2d 88, 93-94 (Ind. Ct. App. 1990), and is intended "to provide context for otherwise isolated comments when fairness requires it" and thereby prevent one party from misleading the jury. *Evans v. State*, 643 N.E.2d 877, 881-82 (Ind. 1994). "If

---

[1] We note, as does the State, that this doctrine is also codified in Indiana Evidence Rule 106, which provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." However, Rule 106 applies only to written or recorded statements or parts thereof, whereas the common law doctrine of completeness remains applicable to conversations as well. *E.g.*, *Lewis v. State*, 754 N.E.2d 603, 607 (Ind. Ct. App. 2001). During trial, the State never introduced any of the written or recorded (audio or video) statements made by Stanley, but instead questioned Officer Osborn about Stanley's statements. As such, the common law doctrine of completeness is implicated here rather than Rule 106.

the portion of the statements that contained incriminating elements is admitted, the entire statement is admissible despite the fact that the statement also contains exculpatory claims." *Stuckey*, 560 N.E.2d at 94. However, a court is not required to admit remaining portions of the statement "that are neither explanatory nor relevant to the portions already introduced." *Barnett v. State*, 916 N.E.2d 280, 286 (Ind. Ct. App. 2009). The remaining statement is also subject to general rules of admissibility in that any portion determined by the court to be immaterial, irrelevant, or prejudicial must be not be admitted. *Evans*, 643 N.E.2d at 881.

[16]   Here, Stanley asserts that the State introduced, through Officer Osborn's testimony, Stanley's admission to Officer Osborn that he entered the Millers' car, and argues that because this admission was incriminating, Stanley was improperly prevented from cross-examining Officer Osborn about the rest of the statements Stanley made during that same conversation. However, as the State correctly points out, such a statement—that Stanley admitted to Officer Osborn to entering the car—was never elicited by the State or presented to the jury at trial. Rather, the only statement of Stanley's that was introduced via Officer Osborn's testimony was Stanley's statement to him that he did not take the cell phones:

> STATE: When you spoke to [Stanley] at the police department, did he deny taking the cell phones?
>
> OFFICER OSBORN: Yeah. Donald said he did not take 'em. . . .

Tr. Vol. II. p. 149. On its own, this statement regarding the phones is not incriminating or inculpatory for either the theft charge or the invasion of privacy conviction.

[17] Stanley also contends that limiting the scope of his cross-examination of Officer Osborn prevented him from fully presenting his defense—because the excluded testimony regarding whether Stanley believed the protective order to be in effect goes to the "knowing" element of the invasion of privacy offense.[2] Again, however, Stanley centers this argument around the admission to Officer Osborn that he entered the car, a statement which was never actually elicited or introduced at trial. Moreover, the invasion of privacy charge was not based on Stanley's entering the car, but instead on Stanley's behavior upon re-entering the courthouse. *See, e.g.*, Tr. Vol. II p. 197, 213-14.

[18] Further, we find that the statement Stanley sought to admit—that Stanley told Officer Osborn that another officer had told him the protective order against him was not effective until July—is neither explanatory of nor relevant to the testimony the State introduced that Stanley denied taking the phones. Stanley's statement regarding the protective order does not explain or provide additional context for his denial of taking the phones. The denial of taking the phones, without the additional testimony Stanley sought to admit, does not make it any more or less likely that Stanley deliberately violated the protective order. As

---

[2] Under Indiana Code § 35-46-1-15.1(a), "[a] person who knowingly or intentionally violates . . . an ex parte protective order" commits an invasion of privacy offense.

such, the admitted testimony bore no risk of misleading the jury even if not supplemented by the statements Stanley sought to introduce. The doctrine of completeness thus did not require the trial court to admit the statement, and the court did not err in limiting the scope of Stanley's cross-examination of Officer Osborn.

# II. Probation Revocation

[19] Stanley next argues that the trial court improperly revoked his probation in Cause FC-40 and ordered the remainder of his sentence to be served in the DOC. As with other sentencing decisions, "[t]he decision to revoke probation is within the sole discretion of the trial court." *Woods v. State*, 892 N.E.2d 637, 639 (Ind. 2008). We will affirm a decision to revoke probation unless the decision is clearly against the logic and effects of the facts and circumstances. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[20] The violation of just one condition of probation is sufficient for a trial court to revoke probation. *Snowberger v. State*, 938 N.E.2d 294, 296 (Ind. Ct. App. 2010); *see also* Ind. Code § 35-38-2-3(a) (providing that a court may revoke probation if a condition of the probation was violated during the probationary period and a petition for revocation was timely filed). If the trial court finds that a person violated a condition of probation, then it may either continue the person on probation without modifying the conditions, extend the probationary period for up to one year beyond the original period, or order all or part of the remaining period to be executed. I.C. § 35-38-2-3(h). So long as there is "substantial

evidence of probative value" to support the trial court's decision to revoke probation, we will affirm that decision. *Woods*, 892 N.E.2d at 639-40.

[21] Here, Stanley violated his probation by committing misdemeanor invasion of privacy while on probation for his prior felony conviction. The trial court stated: "[T]here is a lower standard of—of burden of proof in a probation violation. . . . it's this court's opinion that that burden . . . has clearly been met." Tr. Vol. II p. 233. The trial court also found that the State met its burden for theft as a Class A misdemeanor for purposes of showing a probation violation. *See id.*

[22] The trial court further noted "a pattern of just continued behavior of . . . not willing to abide by rules and orders of the Court," and that Stanley's prior driving while suspended violations and current probation violations "shows . . . [Stanley is] not making any progress towards those areas." *Id.* at 246. The trial court acknowledged Stanley's military service and the disabilities (namely, post-traumatic stress disorder) suffered as a result of that service, but concluded that "[Stanley's] conduct here cannot be tolerated, regardless of what that . . . service record looks like." *Id.*

[23] We find that the trial court was well within its discretion in granting the petition to revoke probation and ordering the remaining four and one-half years to be served as a sanction for Stanley's probation violation.

The judgment of the trial court is affirmed.

Riley, J., and Bradford, J., concur.