COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, Raphael and Callins
Argued at Richmond, Virginia

**PUBLISHED**

MAMDOH ABOUEMARA

OPINION BY
v.       Record No. 0284-22-2                    JUDGE STUART A. RAPHAEL
JUNE 6, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
S. Anderson Nelson, Judge

Charles C. Cosby, Jr. (Kevin E. Calhoun, on brief), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Mamdoh Abouemara was convicted of bribery under Code § 18.2-447 after he offered to

the town council for the Town of La Crosse that he would pay $500 a month to the town if the

council would write a letter supporting the gaming machines in his convenience store.  On

appeal, Abouemara claims that the prosecution failed to prove that he acted with a corrupt intent

or with an intent to undermine the administration of justice.  Because the evidence taken in the

light most favorable to the Commonwealth satisfies the elements of bribery, however, we affirm

his conviction.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard" the

defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all

the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the

Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In 2019, Abouemara operated a convenience store in the Town of La Crosse, in Mecklenburg County. His store featured gaming machines.

Kendall Foster was the chief of police for the town. Before the incident at issue, Chief Foster investigated the legality of operations at Abouemara's store after observing many cars in the parking lot between 11:00 p.m. and 5:00 a.m., when the store was closed. Foster also found "cash in, cash out" receipts in the store's garbage.[1]

The town manager of La Crosse was F.A. Hendrick, an employee of the town council. His job responsibilities included attending all public meetings, representing the town to the public, and submitting certain questions to the council to elicit the members' vote. As Hendrick put it, "I do the minor stuff. The major stuff I . . . bring up to the council and get a vote."

During the first week of October 2019, Abouemara came to Hendrick's office, wanting to "talk . . . about making some donations to the Town of La Crosse." Abouemara also "said that he would like a letter of support for his machines and business . . . . [H]is lawyer advised him that it would be nice to get that from the town, a letter of support from the town." Hendrick responded that the town could not "take donations directly," but that Abouemara could donate to the "Friends of La Crosse," a 501(c)(3) organization. That group disburses funds as it "see[s] fit for the betterment of the town."

While Hendrick could not agree to Abouemara's proposal, he offered to take it to the town council. He testified that Abouemara "was in agreement" with doing so and with a "vote being taken" by the council. The town clerk was within earshot for that conversation.

---

[1] After the incident at issue here, the sheriff's office executed a search warrant, seizing cash and several of the gaming machines from the store.

The town council meeting occurred on December 9, 2019. Chief Foster attended in person and recorded portions of the meeting on his work phone. His recording was admitted into evidence. Hendrick brought up Abouemara's proposal at the end of his manager's report to the council. Although the recording is poor, Hendrick can be heard relating Abouemara's proposal as follows:

> He has contacted us before, and I told him I'd get back with him. He's contacted the town office again. He wants to make a monthly donation of $500 per month to the town, but he wants in return a letter in support of his machines that he has at his place of business.

It is undisputed that the town council did not accept Abouemara's proposal. Chief Foster testified that the council voted against it with a "unanimous no." Hendrick did not recall that a vote was taken but was clear that the councilmembers were not interested. The recording features the chair calling for a motion and a second on the question (possibly to lay the question on the table), but the recording is too garbled to make out. After the council declined the proposal, laughter can be heard on the recording after one person joked, "Well, we do need to fix the porch."

When Abouemara next visited the town manager's office, Hendrick told him that the town council had rejected his proposal. Abouemara said that he still wanted to donate $200 to the town. Abouemara had presented Hendrick with a $200 check, payable to "Town of La Crosse," and drawn on the account of his Mini Mart business. But Chief Foster had advised Hendrick not to deposit the check. The clerk issued a receipt showing that the transaction was "void."

Abouemara was indicted on two counts of bribery in violation of Code § 18.2-447. One indictment (CR20-224-00) charged him with bribery of a public servant during the period "October 1, 2019 through December 9, 2019." A second (CR20-101-00) charged him with

- 3 -

bribery for a "shorter date range" that was "just those few days in December," apparently corresponding to Abouemara's meeting with Hendrick, after the town council had met, when Abouemara still wanted to donate $200.[2]

At the bench trial that followed, the trial court granted Abouemara's motion to strike the second indictment, but not the first indictment. As to the first indictment, Abouemara's attorney argued that the Commonwealth had failed to prove bribery because it had not established "a quid pro quo" and the proposal was made in public, rather than in "a sneaky, clandestine, non-public way." "This is not typically a bribery case," he said, "where it's out in the open." While conceding his client's conduct was "suspicious," Abouemara's counsel argued that it did not "rise to the level of proving bribery."

The prosecutor responded that the statutory elements of Code § 18.2-447 were satisfied. She referenced both subsections (1)(a) and (1)(b) of the statute. Subsection (1)(a), she said, prohibited paying a "pecuniary benefit as consideration for or to obtain or influence the recipient's decision, recommendation, vote, or other exercise of discretion as a public servant or party official." She also argued that the evidence satisfied (1)(b), "the further subsection."[3]

The trial court found Abouemara guilty of bribery on the remaining indictment. It found that, with his business under investigation, Abouemara offered to pay money to the town in exchange for the town giving him a letter of support for his gaming machines. Abouemara had "coupled" his offer of money to what he wanted in return. After convicting him of bribery under Code § 18.2-447, the court sentenced Abouemara to five years' incarceration, with all five years suspended, and a one-year term of probation. Abouemara noted a timely appeal.

_____

[2] The second indictment is not in the record.

[3] Although the indictment included language drawn from subsection (1)(b) of Code § 18.2-447, rather than subsection (1)(a), Abouemara did not challenge the validity of the indictment or object to any variance between the indictment and the proof.

- 4 -

ANALYSIS

When, as here, an appellant challenges the sufficiency of the evidence supporting his conviction, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Perkins*, 295 Va. at 327). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Laws against bribery have a long pedigree. At common law, bribery was an "offence against public justice[,] which is when a judge, or other person concerned in the administration of justice, takes any undue reward to influence his behaviour in his office." 4 William Blackstone, *Commentaries* *139. Blackstone condemned bribery as "calculated for the genius of despotic countries[,] where the true principles of government are never understood." *Id.* Virginia's colonial general assembly prohibited public officials from accepting bribes in the form of "money" or "any public entertainment of meat or drink." 1775 Va. Acts ch. 4, § 9. Those who violated the law were "disqualified" from public office. *Id.* After independence, the General Assembly enacted a law prohibiting judges and State and local public officials from taking "any manner of gift . . . or reward for doing his office," other than a government salary.

- 5 -

1786 Va. Acts ch. 52. A violator was liable for "the treble value of that he hath received, shall be amerced [fined] and imprisoned at the discretion of a jury, and shall be discharged from his office forever." *Id.*

The current version of Virginia's laws prohibiting bribery of State and local public officials is found in Title 18.2, Article 3 ("Bribery of Public Servants and Party Officials"), enacted in 1968. *See* 1968 Va. Acts ch. 552 (codified as amended at Code §§ 18.2-446 to 18.2-450). Bribery is a Class 4 felony. Code § 18.2-449. Apart from a possible prison sentence of up to ten years, *see* Code § 18.2-10(d), a person convicted of bribing a public official is "forever incapable of holding any public office in this Commonwealth," Code § 18.2-449.

Code § 18.2-447 defines bribery to prohibit a person from *offering* a bribe (subsection one), *accepting* a bribe (subsection two), or *soliciting* a bribe (subsection three). "The comprehensive and inclusive language of the statute . . . prohibits three specific acts, the giving of a bribe, the offer of a bribe and the promise of a bribe, any one of which is a complete crime in itself." *Mendez v. Commonwealth*, 220 Va. 97, 100 (1979) (quoting *Ford v. Commonwealth*, 177 Va. 889, 893 (1941)).

The offering of a bribe under subsection one is implicated here. It defines two ways to commit the offense, one involving the offer of a "pecuniary benefit" (subsection (1)(a)), and the other involving the offer of "any benefit" (subsection (1)(b)):

> A person shall be guilty of bribery under the provisions of this article:
>
> (1) If he offers, confers or agrees to confer upon another
>
> > (a) any pecuniary benefit as consideration for or to obtain or influence the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant or party official, or
> >
> > (b) any benefit as consideration for or to obtain or influence either the recipient's decision, opinion, recommendation,

> vote or other exercise of official discretion in a judicial or administrative proceeding or the recipient's violation of a known legal duty as a public servant or party official . . . .

Code § 18.2-447(1).

The term "benefits" is defined as "a gain or advantage, or anything regarded by the beneficiary as a gain or advantage." Code § 18.2-446(1). The benefit does not have to be conferred on the person receiving the bribe. It can be "a benefit to any other person or entity in whose welfare he is interested." *Id.* The term "pecuniary benefit" means "a benefit in the form of money, property, commercial interest or anything else the primary significance of which is economic gain." Code § 18.2-446(3). The term "public servant" is defined as "any officer or employee of this Commonwealth or any political subdivision thereof, including members of the General Assembly and judges, and any person participating as a juror, advisor, consultant or otherwise, in performing any governmental function." Code § 18.2-446(4).

Taken in the light most favorable to the Commonwealth, the evidence sufficed to show that Abouemara violated subsection (1)(a) of the statute because he "offer[ed] . . . to confer upon another . . . any pecuniary benefit as consideration for or to obtain or influence the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant." Code § 18.2-447(1)(a). Abouemara offered to pay $500 a month to the town council (whether directly or through the Friends of La Crosse) in exchange for the town council's letter of support for his gaming machines. The testimony showed that Abouemara knew he was asking the councilmembers to "vote" on his proposal. The councilmembers may or may not have formally voted on the proposal, but they definitively decided not to accept it. In any case, the evidence showed that Abouemara offered to confer a "pecuniary benefit," "upon another," "to obtain or influence" the councilmembers' "decision, opinion, recommendation, [or] vote," to issue a letter endorsing his gaming machines.

Abouemara conceded at oral argument that the text of the offer as reported by Hendrick to the town council met the definition of bribery under Code § 18.2-447(1). But Abouemara argues that his proposal was not a "quid pro quo" and did not constitute a bribe because it was not done in a clandestine manner. We assume without deciding that these arguments are fairly encompassed within his single assignment of error: that there was insufficient evidence to prove that he acted "[1] with an intent to corrupt or [2] an intent to unlawfully influence or undermine the proper administration of justice." Even so, we find no merit in those claims.[4]

To start, there was sufficient evidence to support the trial court's conclusion that Abouemara proposed a quid pro quo—a Latin phrase that means "something for something." *Quid pro quo*, *Black's Law Dictionary* (11th ed. 2019). As reported by Hendrick,[5] Abouemara offered to "make a monthly donation of $500 per month to the town, but he wants in return a letter in support of his machines that he has at his place of business." That evidence supported

---

[4] We disagree with our dissenting colleague's suggestion that Abouemara's conviction should be reversed on the ground that the indictment charged a violation of only Code § 18.2-447(1)(b), not subsection (1)(a), and that the evidence failed to prove a violation of subsection (1)(b). As noted above, Abouemara never argued below that the indictment was limited to subsection (1)(b), nor did he assign error on that ground, nor did he advance the dissent's argument on brief or at oral argument here. Moreover, the prosecutor specifically relied on subsection (1)(a) at trial, and Abouemara himself addressed only subsection (1)(a) in his motion to set aside the verdict. Thus, Abouemara plainly forfeited the subsection (1)(b) argument that the dissent raises. *See Commonwealth v. Bass*, 292 Va. 19, 27 n.4 (2016) ("It is well settled that the question of a variance between an indictment and the proof offered at trial is subject to the contemporaneous objection rule."); *Banks v. Commonwealth*, 67 Va. App. 273, 289-90 (2017) (holding that the failure to assign error as required by the rules of court waives a challenge that the charging document was defective or that there was a fatal variance between the charging document and the proof). Because the evidence sufficed to prove a violation of subsection (1)(a), we do not address the dissent's arguments about subsection (1)(b).

[5] The fact that the offer was communicated through Hendrick, the town manager, does not matter because Abouemara authorized Hendrick to present the offer to the council. *Accord Mendez*, 220 Va. at 99, 101 (upholding bribery conviction where one prison guard communicated the defendant's offer to another prison guard). Abouemara concedes on brief that, at the very least, he "acquiesce[d]" in Hendrick's taking Abouemara's proposal to the council.

the court's finding that Abouemara "coupled" (1) his offer of $500 a month to the town council to (2) receiving a letter from the council supporting his gaming machines. The offer was "a complete crime in itself." *Mendez*, 220 Va. at 100 (quoting *Ford*, 177 Va. at 893).

We reject Abouemara's claim that, while his proposal was "suspicious," it was not a crime because it was made "in an open and notorious way," given that he knew "Mr. Hendrick[] [was] going to take it to a whole group of people at town council." Nothing in the text of Code § 18.2-447 requires that the bribe be offered secretly or surreptitiously. If that were true, the most unseemly, open, and notorious bribes offered to public servants in plain view would be immunized from prosecution.

Nor does the statute require the prosecution to prove corruptness as an element of the offense. To be sure, other bribery statutes sometimes state that the defendant must have acted "corruptly." *See* Code § 18.2-438 (making it a crime for any person to "corruptly give, offer or promise" a bribe to "any executive, legislative or judicial officer, sheriff or police officer, or to any candidate for such office"); Code § 18.2-441 (making it a crime for any "commissioner, auditor, arbitrator, umpire or juror [to] corruptly take or receive" a bribe). The predecessor of Code § 18.2-438, construed in *Ford*, also included the term "corruptly." *See* 177 Va. at 891 (construing Code § 4496 (1936)).[6] Whatever its meaning in those statutes, however, the General Assembly chose not to use *corruptly* in Code § 18.2-447. And because the General Assembly "used specific language in one instance but omit[ted] that language or use[d] different language when addressing a similar subject elsewhere in the Code," we "must presume that the difference in the choice of language was intentional." *Morgan v. Commonwealth*, ___ Va. ___, ___ (Dec.

---

[6] Although our caselaw has not defined *corruptly* as used in those statutes—and we do not do so here—the term usually means "[i]n a corrupt or depraved manner; by means of corruption or bribery. As used in criminal-law statutes, *corruptly* usu[ally] indicates a wrongful desire for pecuniary gain or other advantage." *Corruptly*, *Black's Law Dictionary*, *supra*.

- 9 -

29, 2022) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011)). Omitting an independent "corruptness" element from the bribery provisions in Code § 18.2-447 was a proper exercise of legislative judgment.  For the General Assembly enjoys "the prerogative to regulate the permissible scope of interactions between state officials and their constituents." *McDonnell v. United States*, 579 U.S. 550, 576 (2016).

We also reject Abouemara's claim that his attempted donation of $200 after the town council rejected his original offer showed that the original offer was not a bribe.  For one thing, the bribe was a completed crime once communicated to the town council; the "offer or promise of a gift, constitutes bribery on the part of the offeror or promisor as fully and completely as if a corrupt gift had been made and accepted." *Mendez*, 220 Va. at 100-01.

For another, we must take "all fair inferences" from the facts in the light most favorable to the Commonwealth, *Perkins*, 295 Va. at 324, and those inferences here incriminate Abouemara.  For instance, his paying $200 once, rather than $500 every month, could well have signaled punishment for the council's failure to accept the bribe.  Or the donation could have been a fallback effort to curry favor.  Or an attempt to cover up the crime.  The Commonwealth argued that the smaller, one-time donation confirmed that the earlier offer—$500 a month in exchange for the letter—was, in fact, a quid pro quo.  And Abouemara's counsel agreed at oral argument that such an inference would be reasonable, taking the inferences in the light most favorable to the Commonwealth.

Abouemara asks on brief that we discount Hendrick's credibility as a witness.  Hendrick was uncertain about *when* he received the $200 check.  The check was dated as of October 26, 2019.  Hendrick first testified that Abouemara gave it to him after the December 9 town council meeting, when Abouemara said he still wanted to make a donation.  Hendrick then remembered

- 10 -

that Abouemara might have given it to him before the town council meeting, as Hendrick distinctly recalled that Foster told him at that meeting not to deposit the check.

Assessing witness credibility was the task of the trial court, which "applaud[ed]" Hendrick "for his honesty," finding the question of when the check was tendered irrelevant to whether Abouemara offered a bribe. We cannot disturb the trial court's credibility determination unless Hendrick's testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). And Abouemara does not and could not persuasively claim that, under that standard, Hendrick's testimony should have been disregarded.

CONCLUSION

The crime of bribery is complete when a defendant "offers . . . any pecuniary benefit as consideration for or to obtain or influence the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant." Code § 18.2-447(1)(a). Because there was enough evidence to prove beyond a reasonable doubt that Abouemara did that here, the trial court did not err in convicting him.

*Affirmed*.

Chaney, J., dissenting.

On appeal of his conviction for bribery of a public servant, Mamdoh Abouemara contends that the evidence is insufficient to prove that he acted with the requisite intent for bribery. Because the evidence is insufficient to satisfy the intent element for bribery under Code § 18.2-447, I would reverse and vacate the conviction. Therefore, I respectfully dissent from the majority's judgment affirming the bribery conviction.

BACKGROUND

Abouemara owned a convenience store in the Town of La Crosse (town). In addition to the merchandise for sale, the store had a deli and several gaming machines.

In October 2019, Abouemara went to the office of the town manager, Frank Hendrick, and had an unscheduled meeting with Hendrick. Hendrick was a part-time employee of the town council, whose members are elected officials. As town manager, Hendrick was in charge of the town's budget and daily operations. Hendrick also participated in the town council's meetings by presenting proposals for a vote by council members. Hendrick was not a voting member of the town council.

At the October 2019 meeting with Hendrick, Abouemara said, "I'd like to talk to you about making some donations to the Town of La Crosse." Abouemara also said that "he would like a letter of support for his machines and business." Abouemara told Hendrick that "his lawyer advised him that it would be nice to get [a letter of support] from the town." Hendrick testified that Abouemara "came in and said, you know, I would like to make a donation to the town, but my lawyer says he would like to get a letter of support for my machines and my business, also." The trial court explicitly found that Abouemara requested the town's letter of support on the advice of his attorney.

- 12 -

In response to Abouemara's expressed interest in making donations to the town, Hendrick informed Abouemara that the town could not take donations directly, but donations could be made to Friends of La Crosse, a non-profit organization that disperses donations for the betterment of the town. In response to Abouemara's request for the town's letter of support for his business and gaming machines, Hendrick "said [he] could not do that as a town manager, that [he] would take that proposal to the town council." Abouemara agreed when Hendrick said he would present Abouemara's proposal to the town council for a vote.

At the next town council meeting, on December 9, 2019, Hendrick told the members of the town council that Abouemara "wants to make a monthly donation of $500 per month to the Town, but he wants in return a letter of support for his machines that he has at his place of business." The town council unanimously voted to reject this proposal.

Two days after the December 2019 town council meeting, Abouemara returned to Hendrick's office and Hendrick informed him that the town council voted against his proposal. Abouemara replied that he still wanted to make a donation. The town's clerk-treasurer gave Abouemara a receipt for a $200 check from Abouemara's business to the town. The check is dated October 26, 2019, but the receipt for the check is dated December 11, 2019. Hendrick repeatedly testified that Abouemara provided the check at their second encounter, after the council meeting. But Hendrick also testified that during the council meeting, the chief of police, Kendall Foster, advised him not to cash Abouemara's check because the matter was under investigation. Hendrick acknowledged that he could not recall whether Abouemara provided the $200 check before or after the town council rejected his proposal.

On December 15, 2019, the police executed a search warrant to search Abouemara's store and seized several gaming machines.

In September 2020, Abouemara was indicted on two charges of bribery. A bench trial on the bribery charges was held in August 2021. After the Commonwealth rested its case, Abouemara moved to strike on the ground that the evidence failed to prove that he had the requisite intent for bribery. The trial court granted the motion to strike the evidence only on the second charge of bribery. Abouemara presented no evidence and renewed his motion to strike. The trial court concluded that because Abouemara, through Hendrick, made his offer prior to the town council meeting, it did not matter whether Abouemara delivered the $200 check before or after the council meeting. The trial court explicitly found that Abouemara "coupled the request with the offer," and found Abouemara guilty of bribery as charged in the first indictment.

In January 2022, the trial court heard Abouemara's motion to set aside the verdict. Abouemara argued that the evidence failed to prove that he intended to corrupt or bribe anyone. Following oral arguments, the trial court denied the motion to set aside the verdict.

ANALYSIS

*A. Bribery under Code § 18.2-447*

Pursuant to Code § 18.2-447(1), a person is guilty of bribery:

> If he offers, confers or agrees to confer upon another
>
> (a) any pecuniary benefit as consideration for or to obtain or influence the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant or party official, or
>
> (b) any benefit as consideration for or to obtain or influence either the recipient's decision, opinion, recommendation, vote or other exercise of official discretion in a judicial or administrative proceeding or the recipient's violation of a known legal duty as a public servant or party official[.]

Code § 18.2-446(3) defines *pecuniary benefit* as "a benefit in the form of money, property, commercial interest or anything else the primary significance of which is *economic gain*." (Emphasis added). Given this statutory definition of *pecuniary benefit*, a bribe in the form of

- 14 -

pecuniary benefit necessarily involves offering, conferring, or agreeing to confer economic gain on another in consideration for or with the intent "to obtain or influence the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant or party official." Code § 18.2-447(1)(a).

In addition to criminalizing bribes in the form of pecuniary benefit, Code § 18.2-447(1) also prohibits offering, conferring, or agreeing to confer upon another "*any* benefit" in consideration for or with the intent "to obtain or influence either the recipient's decision, opinion, recommendation, vote or other exercise of official discretion in a judicial or administrative proceeding or the recipient's violation of a known legal duty as a public servant or party official[.]" Code § 18.2-447(1)(b) (emphasis added). Code § 18.2-446(1) defines *benefits* as "a gain or advantage, or anything regarded by the beneficiary as a gain or advantage, *including a benefit to any other person or entity in whose welfare he is interested*."[7] (Emphasis added). Thus, bribery of a public servant under Code § 18.2-447(1) does not necessarily involve an offer or transaction that benefits the public servant personally.

### B. Intent to Corrupt

Abouemara argues on appeal that the evidence was insufficient to prove that he acted with the requisite intent for bribery under Code § 18.2-447 because "the evidence was insufficient to show that he intended to corrupt or to unlawfully influence Mr. Hendrick[] or the town council, or to otherwise undermine the proper and orderly administration of justice." Opening Br. 10-11. The Commonwealth responds, in part, that "[t]he plain language of Code § 18.2-447 . . . does not require an intent to corrupt" because Code § 18.2-447 does not contain the limiting term "corruptly," which

---

[7] *Benefits* as defined in Code § 18.2-446(1) "shall not mean an advantage promised generally to a group or class of voters as a consequence of public measures which a candidate engages to support or oppose."

is included in other bribery statutes.[8]  *See,* e.g., Code § 18.2-438 ("If any person *corruptly* give, offer or promise to any executive, legislative or judicial officer, sheriff or police officer, or to any candidate for such office . . . any gift or gratuity, with intent to influence his act, vote, opinion, decision or judgment . . . ." (emphasis added)).  By omitting the term *corruptly* from the definition of bribery in Code § 18.2-447, the General Assembly excluded a requirement of corrupt motive as an element of bribery of a public servant or party official.  *See Virginia Elec. and Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021) ("[This Court] 'presume[s] that the legislature chose, with care, the specific words of the statute' and that '[t]he act of choosing carefully some words necessarily implies others are omitted with equal care.'" (third alteration in original) (quoting *Wal-Mart Stores East, LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020))).  However, a corrupt motive is different from an intent to corrupt.  *See Brown v. Commonwealth*, 238 Va. 213, 221 (1989) ("Motive is the inducing cause, while intent is the mental state with which the criminal act is committed." (quoting C. Torcia, *Wharton's Criminal Evidence* § 170 (13th ed. 1972))).  The General Assembly's omission of the term *corruptly* from Code § 18.2-447 precludes a defense based on an offeror's benevolent motive; it does not eliminate the element of intent to corrupt from the crime of bribery.  As our Supreme Court recognized in *Ford v. Commonwealth*, 177 Va. 889 (1941), "the offense [of bribery] is the intention to poison and corrupt the source and fountain of justice."  *Id.* at 894.

Code § 18.2-447(1)(a) provides that the requisite intent for bribery is the intent "to obtain or influence the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant."  Code § 18.2-447(1)(b) provides that the requisite intent for bribery is the intent to obtain or influence "the recipient's decision, opinion, recommendation, vote or other exercise of official discretion in a judicial or administrative proceeding or the recipient's violation of a known

---

[8] *See* Appellee's Br. 7 n.4.

legal duty as a public servant." One who offers to confer a benefit upon a public servant with such intent thereby attempts to pervert the exercise of official discretion and induce the recipient's abuse of his or her official position or role. Such abuse of power by a public servant is manifest corruption. Thus, although Code § 18.2-447(1) does not include the phrase "intent to corrupt," evidence of the requisite intent for bribery under Code § 18.2-447(1) constitutes evidence of an intent to corrupt. *See Mendez v. Commonwealth*, 220 Va. 97, 101 (1979) ("The gist of the offense [of bribery] is the criminal intent to undermine the proper and orderly administration of justice. The crime is committed by the making of the corrupt offer." (quoting *Ford*, 177 Va. at 893)).

In finding that Abouemara had the requisite intent for bribery, the trial court held that the gravamen of his offense was making a simultaneous offer and request that "coupled" his offer of monetary donations with his request for the town's letter of support for his business and gaming machines. The trial court told Abouemara, "If you'd just asked for that letter of recommendation and support of your business we wouldn't be here today. Nothing wrong with asking for that." The trial court further advised Abouemara, "[I]f you'd gone down the street and mailed them a check you'd been fine." But the trial court found that Abouemara violated the bribery statute because he "coupled the request with the offer."

The majority's opinion agrees with the trial court that proof that defendant conditioned an otherwise lawful monetary offer to the town on an otherwise lawful request for the town's letter of support is sufficient to find that defendant acted with the requisite intent for bribery. I disagree. Although the intent necessary to sustain a bribery conviction under Code § 18.2-447(1) is in the nature of a quid pro quo requirement, the requisite intent is not necessarily satisfied by offering a quid pro quo.

It is widely recognized that the requisite intent for the crime of bribery is an intent to influence a public servant "to do or not to do something in the line of his official duty." *See*

*Taylor v. State*, 156 S.E. 623, 625 (Ga. 1931). Code § 18.2-447, properly construed, accords with

the majority view that public servant bribery necessarily pertains to the public servant's

performance of official duties.[9] As a penal statute, Code § 18.2-447 "must be strictly construed

---

[9] The laws of 42 other states recognize that public servant bribery is necessarily related to the recipient's duties as a public servant. *See Reed v. State*, 372 So. 2d 876, 877 (Ala. 1979) (bribery requires intent "to influence [public officer] in the performance of any of his public or official duties"); *State v. Hendricks*, 186 P.2d 943, 947 (Az. 1947) ("there can be no bribery of an officer outside the scope of his official duty"); Ark. Const. art. V, § 35 (defining bribery as requiring intent "to influence [public official's] action in the performance or non performance of his public or official duty"); *People v. Longo*, 259 P.2d 53, 56 (Ca. 1953) (recognizing it is "essential to the crime of bribery" that the officer's action "falls within the general scope of his duties"); Colo. Const. art. XII, § 7 (defining bribery as an offer, gift, or promise "to influence [a public officer] in the performance of any of his public or official powers or duties"); Del. Const. art. 2, § 22 (defining bribery as a gift, offer, or promise "for the purpose of influencing [a public official] in the performance of any of his or her official or public duties"); *Greene v. State*, 263 So. 2d 194, 196-97 (Fla. 1972) (Florida bribery statute requires proof that the action sought to be influenced is within the official duties of the official); *Taylor v. State*, 156 S.E. 623, 625 (Ga. Ct. App. 1931) (defining bribery as requiring intent to influence a public official "in the discharge of his duty in any office of government or of justice"); *Territory v. Lau Hoon*, 23 Haw. 616, 619 (1917) ("The gist of bribery is the corrupting or attempt to corrupt an official in the discharge of his duty."); *People v. Patillo*, 54 N.E.2d 548, 553 (Ill. 1944) ("The gist of the offense of bribery is the giving to, and receiving or accepting of money or other valuable thing by, a public officer to influence him with respect to the performance of his official duty."); *Stuckey v. State*, 560 N.E.2d 88, 92 (Ind. Ct. App. 1990) ("the gravamen of the offense of bribery is the soliciting or receiving of money by an official to influence him with respect to his official duties"); *Dishon v. Smith*, 10 Iowa 212, 221 (Iowa 1859) ("Bribery may be defined to be the giving . . . to another, anything of value or any valuable service, intended to influence him in the discharge of a legal duty."); Kan. Stat. Ann. § 21-6001 (defining bribery as requiring "intent to improperly influence a public official" in "the performance or omission of performance of the public official's powers or duties"); *Com. v. Funk*, 234 S.W.2d 957, 958 (Ky. Ct. App. 1950) (defining bribery as requiring intent "to influence [any public officer's] behavior in the discharge of his duty"); *State v. Smith*, 212 So. 2d 410, 413 (La. 1968) ("'public bribery' . . . can mean nothing more than to influence [a public servant] with respect to the duties of his particular office"); *State v. Miles*, 36 A. 70, 72 (Me. 1896) (bribery is the crime of offering any undue reward or payment to anyone entrusted with a public duty "to influence his behavior in the discharge of his duty"); *Richardson v. State*, 492 A.2d 932, 934 (Md. Ct. Spec. App. 1985) ("Both under the [Maryland bribery] statute and the common law it is essential for a conviction of bribery that the briber must make an attempt to influence the bribee in the performance of his 'official,' 'public' or 'legal' duty." (quoting *State v. Canova*, 365 A.2d 988, 990 (Md. Ct. App. 1976)); *Commonwealth v. Degnan*, 73 N.E.3d 823, 828 (Mass. Ct. App. 2017) (a bribe is "for the purpose of inducing [a public officer] to violate his official duty"); *People v. Ritholz*, 103 N.W.2d 481, 486 (Mich. 1960) (the purpose of bribery statutes is to prevent the corruption of public officials through "attempt[s] to pervert the exercise of honest judgment in the discharge of their duties"); Minn. Stat. Ann. § 609.42 (bribery defined as requiring intent "to influence [a

- 18 -

public officer's or employee's] performance of the powers or duties as such officer or employee"); *State v. Adcox*, 278 S.W. 990, 991 (Mo. 1925) ("In order to bribe an officer, he must be in the discharge of a legal or official duty." (citation omitted)); *State v. Beazley*, 250 P. 1114, 1114 (Mont. 1926) (bribery requires intent to influence public official "in the performance of his official and public duties"); *State v. Kao*, 531 N.W.2d 555, 557 (Neb. Ct. App. 1995) (bribery of a public servant or peace officer requires "intent to influence that public servant or peace officer to violate his public duty, or oath of office . . ." (quoting Nebraska § 28-917)); *State v. O'Donnell*, 273 A.3d 458, 462 (N.J. App. Div. 2022) (one who commits bribery intends to "influence matters in connection with an official duty"); *State v. Hogervorst*, 566 P.2d 828, 830 (N.M. Ct. App. 1977) (affirmed bribery conviction identifying the crime as "the payment of money to the [public official] with the intent to influence the [public official] in carrying out his duties"); *People v. Dioguardi*, 168 N.E.2d 683, 692 (N.Y. Ct. App. 1960) ("the essence of bribery is the voluntary giving of something of value to influence the performance of official duty" (citation omitted)); *State v. Greer*, 77 S.E.2d 917, 920 (N.C. 1953) (bribery is intended "to influence the recipient's action as a public officer or official . . . in the performance of any official duty required of him"); *State v. La Flame*, 152 N.W. 810, 812 (N.D. 1915) ("The scope . . . of bribery is as broad as the duties of the officer who accepts the bribe." (alteration in original) (citation omitted)); *State v. Knight*, 749 N.E.2d 761, 766 (Ohio Ct. App. 2000) (conviction for bribery of public servant requires proof of intent to influence the public servant with respect to the discharge of official duty); *Allen v. State*, 72 P.2d 516, 519 (Okla. Crim. Ct. App. 1937) (criminal intent in bribery is the intent "to influence corruptly an official in the discharge of his duty"); *State v. Coffey*, 72 P.2d 35, 37 (Or. 1937) (bribery statute "prohibits judicial, legislative, and executive officers from receiving moneys, valuables, etc., which are intended to influence them in the discharge of their duties"); *Com. v. Clarke*, 457 A.2d 970, 972 (Pa. Super. Ct. 1983) (elements of bribery statute were satisfied where defendant "conferred a benefit for the improper use of the officer's duty as a public servant"); *State v. Nadeau*, 105 A.2d 194, 198 (R.I. 1954) (bribery does not encompass acts "wholly outside the scope of [a public servant's] official powers, duties and rights"); *State v. Cole*, 92 S.E. 624, 624 (S.C. 1917) (a bribe is "intended to influence one in the discharge of a legal duty"); *State v. Ferguson*, 395 S.E.2d 182, 183 (S.C. 1990) (holding jury was properly instructed that mental state required for bribery is "*the intent to influence* [an] officer's act or judgment . . . to get him to fail to perform his duties in whatever office he is holding and whatever duty he is required to exercise"); S.D. Const. art. III, § 28 (defining bribery as requiring intent "to influence [executive or judicial officer] in the performance of any of his official or public duties"); *Lee v. State*, 254 S.W.2d 747, 748 (Tenn. 1953) (affirming bribery conviction where money "was offered as an inducement to cause the said [officer] to refrain and desist from performing his duty as such officer" (internal quotation omitted)); *Hubbard v. State*, 668 S.W.2d 419, 420 (Tex. Ct. App. 1984) ("The gist of the [bribery] statute is that the conferring of a benefit upon a public servant as consideration for violation of one of his duties is an offense."); *State v. Smith*, 48 A. 647, 652 (Vt. 1900) (to be guilty of bribery, sheriff must have intended "to be corruptly influenced thereby in the discharge of his official duties"); *State v. Austin*, 400 P.2d 603, 607 (Wash. 1965) ("[W]here the public officer has no official concern or duty with respect to the matter whereof he is influenced, a vital element of the crime of bribery is wanting."); *State v. King*, 138 S.E. 330, 331 (W. Va. 1927) (bribery defined as giving or offering any "thing of value to any officer . . . as a consideration for the performance of, or the failure to perform, any duty of such officer . . ."); *State v. Hibicke*, 56 N.W.2d 818, 820 (Wis. 1953) (holding that bribery statute was not violated where "constable had no duty with respect to" the action sought by the offeror); Wyo. Const. art. III, § 43 (bribery

- 19 -

according to the rule of lenity." *Blake v. Commonwealth*, 288 Va. 375, 386 (2014). "[I]f the language of the statute permits two 'reasonable but contradictory constructions,' the statutory construction favorable to the accused should be applied." *Id.* (quoting *Wesley v. Commonwealth*, 190 Va. 268, 276 (1949)). Thus, to the extent that Code § 18.2-447(1) can be reasonably construed as requiring an intent to influence the recipient's performance of official duties, the statutory construction in this dissent must be adopted instead of the majority's construction.

To satisfy the intent element under subsection (1)(a) of Code § 18.2-447, a quid pro quo must be offered with the intent to influence the recipient's "decision, opinion, recommendation, vote or other exercise of discretion *as a public servant*." Code § 18.2-447(1)(a) (emphasis added). A *public servant* is defined as "any officer or employee of this Commonwealth or any political subdivision thereof, including members of the General Assembly and judges, and any person participating as a juror, advisor, consultant or otherwise, *in performing any governmental function . . . .*" Code § 18.2-446(4) (emphasis added). A municipality's performance of a governmental function involves "exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens." *Massenburg v. City of Petersburg*, 298 Va. 212, 218 (2019) (quoting *Carter v. Chesterfield Cty. Health Comm'n*, 259 Va. 588, 593 (2000)). Thus, the statutory intent to influence a public servant's exercise of discretion *as a public servant* is an intent to influence a public servant's exercise of discretion in the performance of official duties.

To satisfy the intent element under subsection (1)(b) of Code § 18.2-447, a quid pro quo must be offered with the intent to influence "the recipient's decision, opinion, recommendation, vote or other exercise of official discretion in a judicial or administrative proceeding or the recipient's violation of a known legal duty as a public servant." Code § 18.2-447(1)(b). The

---

defined as "offer[ing], giv[ing] or promis[ing] any money or thing of value, testimonial, privilege or personal advantage, to any executive or judicial officer or member of the legislature, to influence him in the performance of any of his official duties").

statutory terms *decision*, *opinion*, *recommendation*, and *vote* are qualified and limited by the phrase "*other* exercise of official discretion." Thus, the requisite intent for bribery under Code § 18.2-447(1)(b) is an intent to influence a decision, opinion, recommendation, or vote that qualifies as an exercise of *official discretion*, or an intent to influence another exercise of *official discretion*.

A town council member exercises *official discretion* only when acting or deciding in his or her official capacity as a public servant in the performance of a governmental function. *See McDonnell v. United States*, 579 U.S. 550, 574 (2016) (holding that *official act* in the context of the federal bribery statute "must involve a formal exercise of governmental power"). As noted above, a municipality's performance of a governmental function involves "exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens." *Massenburg*, 298 Va. at 218. Since the performance of a governmental function necessarily involves the exercise of official duty, the exercise of *official discretion* necessarily relates to acts and decisions "within the range of official duty." *United States v. Birdsall*, 233 U.S. 223, 230 (1914) (construing *official action* for purposes of the federal bribery statute).

On the trial court's reading of the bribery statute, which the majority adopts, one would commit a felonious act by offering a monetary donation to benefit one's community in return for *any* decision or action by a public servant, including any lawful, innocuous decisions and actions that are consistent with the public servant's performance of his or her official duties. To construe the bribery statute as criminalizing *any* proposed quid pro quo would absurdly criminalize offers of monetary donations to benefit the community in return for a letter of thanks or a birthday greeting to the community's oldest citizen. By construing the bribery statute to criminalize any proposal in which there is an exchange of benefits between the town and a private individual, the majority converts the lawful act of proposing a contract to the town council into a criminal act. The General Assembly did not intend such absurd results. *See Taylor v. Commonwealth*, 298 Va. 336, 342

- 21 -

(2020) ("[A] statute should never be construed in a way that leads to absurd results." (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 237 (2013))).

### C. Insufficient Evidence of Criminal Intent for Bribery

Given that both prongs of Code § 18.2-447(1) require proof of an intent to influence a public servant in the exercise of discretion in the performance of his or her official duties, the Commonwealth was required to prove that providing or withholding a letter of support for a private business and its gaming machines was within the scope of the official duties of the public servant who was allegedly bribed.

#### 1. Insufficient Evidence of Criminal Intent under Code § 18.2-447(1)(a)

Abouemara met with the town manager and offered monetary donations to the town in return for a letter of support for his business and its gaming machines. Because there is no evidence that providing or withholding such a letter of support was within the scope of the town manager's official duties, Abouemara's offer to the town manager was not made with the intent "to obtain or influence the [town manager's] decision, opinion, recommendation, vote or other exercise of discretion *as a public servant*." Code § 18.2-447(1)(a) (emphasis added). Therefore, Abouemara's offer to the town manager does not constitute a bribe under Code § 18.2-447(1)(a).

Abouemara agreed when the town manager stated that he would present Abouemara's proposal to the town council for a vote. Subsequently, the town council voted on whether to accept Abouemara's offer of monthly monetary donations to the town in return for the town's letter of support for his business and its gaming machines. By presenting his proposal to the town council for a vote on the proposal, Abouemara was not bribing the town council members. There is a decisive difference between presenting such a proposal for a vote and offering a pecuniary benefit to influence a vote on such a proposal. When the town manager presented Abouemara's proposal to the town council, no member of the town council was offered anything in exchange for his or her

vote at the town council meeting. Thus, by expressing agreement when the town manager stated that he would present Abouemara's proposal to the town counsel for a vote, Abouemara was not making an offer of pecuniary benefit with the intent to influence any town council member's vote as a public servant.

The facts here are distinguished from a bribery scheme in which someone offers a pecuniary benefit to a public servant to influence his or her official vote on a proposal. In such a bribery scenario, the offered pecuniary benefit is intended to influence the public servant to vote based on his or her desire for the offered benefit, contrary to the public servant's official duty to vote based on the merits of the proposal. Here, the benefit offered by Abouemara was part of his proposal, not an offer intended to influence the vote on his proposal. Therefore, in expressing agreement when the town manager stated that he would present Abouemara's proposal to the town council for a vote, Abouemara was not bribing the town council members.

Even if Abouemara had directly offered the town council members monetary donations to the town in return for the town's letter of support for his business and its gaming machines—instead of having his proposal presented to the town council for a vote at a town council meeting—the evidence would not support a finding of the requisite intent for bribery of the town council members under Code § 18.2-447(1)(a). Because there is no evidence that providing or withholding such a letter of support was within the scope of the town council members' official duties, the hypothetical offer to the town council members would not be made with the intent "to obtain or influence the [town council member's] decision, opinion, recommendation, vote or other exercise of discretion *as a public servant*." Code § 18.2-447(1)(a) (emphasis added). Therefore, such an offer to the town council members would not constitute a bribe under Code § 18.2-447(1)(a).

The majority erroneously concludes that the evidence is sufficient to find that Abouemara acted with the requisite intent for bribery under Code § 18.2-447(1)(a) because Abouemara agreed

- 23 -

when the town manager stated that he would present Abouemara's proposal to the town council for a vote at the town council meeting. First, the majority's opinion fails to recognize the important difference between (i) offering a pecuniary benefit to a public servant with the intent to influence his vote as a public servant and (ii) presenting a proposal for a vote by public servants. It would be bribery under Code § 18.2-447(1)(a) to offer a pecuniary benefit with the intent to influence any town council member's vote on a proposal identical to Abouemara's proposal. But presenting Abouemara's proposal for a vote by the town council does not constitute a bribe because it is not an offer of pecuniary benefit to influence the official vote on the proposal. Second, the majority's analysis ignores the statutory phrase "as a public servant." *See* Code § 18.2-447(1)(a) (defining bribery as an offer of pecuniary benefit with the intent to influence the recipient's "decision, opinion, recommendation, vote or other exercise of discretion *as a public servant*" (emphasis added)). As explained above, the exercise of discretion *as a public servant* necessarily relates to a public servant's exercise of discretion in the performance of his or her official duties. Because there is no evidence that providing or withholding a letter of support for a business and its gaming machines was within the scope of the town council members' official duties, the evidence is insufficient to support a finding under Code § 18.2-447(1)(a) that Abouemara bribed the town council members.

2.  <u>Insufficient Evidence of Criminal Intent under Code § 18.2-447(1)(b)</u>[10]

For an offer to constitute a bribe under Code § 18.2-447(1)(b), the offer must be made with the intent to influence either (i) the recipient's exercise of official discretion *in a judicial or administrative proceeding or* (ii) the recipient's violation of a known legal duty as a public servant. During the informal office meeting when Abouemara offered monetary donations to the town and asked Hendrick, as the town manager, to give him a letter of support from the town, Hendrick was not in, nor expected to be in, a judicial or administrative proceeding when deciding whether to accept Abouemara's offer on behalf of the town. Additionally, there is no evidence to support a finding that Hendrick's provision of the requested letter would have violated a known legal duty. Because there is no evidence that Abouemara offered the town manager monetary donations to the town to influence the town manager's exercise of official discretion *in a judicial or administrative proceeding* or to influence the town manager's violation of a known legal duty, Abouemara's offer to Hendrick during the informal office meeting did not constitute an attempt to bribe Hendrick under Code § 18.2-447(1)(b).

When Hendrick stated that he would present Abouemara's proposal to the town council and Abouemara agreed, Abouemara did not ask Hendrick to make any recommendation about the proposal. And the evidence does not support a finding that Abouemara offered, conferred, or

---

[10] The indictment on which Abouemara was convicted alleged:

> ABOUEMARA . . . unlawfully and feloniously did offer, confer, or agree to confer upon another any benefit as consideration for or to obtain or influence either the recipient's decision, opinion, recommendation, vote, or other exercise of official discretion as a public servant, in a judicial or administrative proceeding, or the recipient's violation of a known legal duty as a public servant, in violation of § 18.2-447 and 18.2-446 of the Code of Virginia (1950) as amended.

This indictment charges a violation of Code §§ 18.2-447(1)(b).

agreed to confer any benefit upon Hendrick in return for presenting his proposal to the town council. Thus, no rational factfinder could find that Abouemara offered, conferred, or agreed to confer any benefit with the intent to influence Hendrick's "decision, opinion, recommendation, vote or other exercise of official discretion in a judicial or administrative proceeding." Code § 18.2-447(1)(b).

The evidence is also insufficient for a rational factfinder to find that Abouemara made his offer of monetary donations to the town with the intent to influence any member of the town council in his or her "decision, opinion, recommendation, vote or other exercise of official discretion in a judicial or administrative proceeding." *Id.* As explained above, the presentation of Abouemara's proposal for a vote by the town council did not constitute an offer of pecuniary benefit to any town council member to influence his or her vote on the proposal at the town council meeting. No member of the town council was offered anything in exchange for his or her vote at the town council meeting. Therefore, Abouemara did not bribe any member of the town council under Code § 18.2-447(1)(b).

Even if Abouemara had directly offered the town council members monetary donations to the town in return for the town's letter of support for his business and its gaming machines—instead of having his proposal presented to the town council for a vote at a town council meeting—the evidence would not support a finding of the requisite intent for bribery under Code § 18.2-447(1)(b). The requisite intent under subsection (1)(b) of Code § 18.2-447 is the intent to influence "the recipient's decision, opinion, recommendation, vote or other exercise of official discretion *in a judicial or administrative proceeding* or the recipient's violation of a known legal duty as a public servant." *Id.* (emphasis added). Here, the only relevant exercise of official discretion by the town council members at the town council meeting would be their vote on Abouemara's proposal. As explained above, the presentation of Abouemara's proposal for a vote by the town council did not constitute an offer to influence any town council member's vote on the

- 26 -

proposal. And there is no evidence that the presentation of the proposal was intended to influence any town council member to violate a known legal duty as a public servant. Additionally, the requisite intent under Code § 18.2-447(1)(b) is the intent to influence a public servant's exercise of *official discretion*, i.e., the exercise of discretion in the performance of official duties. The evidence is insufficient to prove this intent because there is no evidence that the town council members had an official duty to provide or withhold the desired letter of support. Therefore, the evidence is insufficient to prove the requisite intent for bribery of the town council members under Code § 18.2-447(1)(b).

## CONCLUSION

For the foregoing reasons, the evidence is insufficient to support a finding that Abouemara acted with the requisite intent for bribery under both prongs of Code § 18.2-447(1). Thus, viewing the evidence in the light most favorable to the Commonwealth, no rational trier of fact could find the essential elements of the alleged bribery beyond a reasonable doubt. Therefore, I would reverse the trial court's judgment, vacate the conviction and sentencing orders, and dismiss the indictment. Thus, I respectfully dissent from the majority's judgment affirming the bribery conviction.